## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MELVIN ALLEN,

      Plaintiff,

        v.

BOARD OF TRUSTEES ROCK
VALLEY COLLEGE, an Illinois public
community college, *et al.*,

      Defendants.

No. 19-cv-05465

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff Melvin Allen bring claims against his former employer, the Board of Trustees for Rock Valley College (the "College") (incorrectly named in the Amended Complaint as Board of Trustees Rock Valley College, *see* 110 ILCS 805/3-11), as well as several College employees in their official and individual capacities. Plaintiff, a 45-year-old Black man, worked at the College from 2014 until his termination in 2018. Plaintiff alleges that the College, in violation of various federal and state laws, terminated him because of his age, race, and his status as a whistleblower. In turn, the College contends that it terminated Plaintiff because of his failure to meet performance expectations. Defendants have moved to dismiss all of Plaintiff's claims.

For the reasons that follow, the Court holds that Plaintiff's discrimination claims under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act are untimely, and that the discrimination claims under Section 1983

and Title VI of the Civil Rights Act are inadequately pleaded. Accordingly, the Court dismisses Plaintiff's federal claims (Counts I-II, IV-V, and VII-VIII)[1] and defers ruling for now on Plaintiff's remaining claim under Illinois law (Count III).

## BACKGROUND

Rock Valley Community College (the "College"), a public community college in Rockford, Illinois, hired Plaintiff as its Executive Director for Recruitment and Admissions in 2014. (Amended Complaint ("Am. Compl.") Dkt. 20 ¶ 15.) In this role, Plaintiff handled the Recruitment and Admissions departments and oversaw a staff of eight employees. (*Id*.) After a reorganization in 2017, Plaintiff's title changed to Associate Vice President for Enrollment and Retention. (*Id*. ¶ 16.) In this new position, Plaintiff was responsible for overseeing several more departments and at least 11 more staff members. (*Id*.)

According to Plaintiff, Defendant Lisa Mehlig, Vice President of Admissions, met with Plaintiff off-campus in 2017 and asked him to "support" inaccurate enrollment numbers that were to be reported to the Illinois Community College Board. (*Id*. ¶ 19.) Plaintiff told Mehlig he believed the enrollment numbers were wrong and had been so for "a long time." (*Id*.) Mehlig responded that she would "just cover up the inaccuracies." (*Id*. ¶ 20.) Plaintiff replied that he could not support the inaccurate information, and Mehlig warned him not to speak to any College board members about the enrollment numbers. (*Id*.)

Shortly thereafter, Mehlig directed another staff member, Dave Costello, to

---

[1] The Amended Complaint does not contain a Count VI.

begin "snooping and making unwelcome and unnecessary visits" to Plaintiff's office and the areas he supervised. (*Id.* ¶ 21.) Other staff members under Plaintiff's supervision noticed Costello's "snooping" and asked him to stop. (*Id.* ¶ 22.) While the "snooping" was going on, Costello purposefully neglected certain work responsibilities so that the projects to which he and Plaintiff were assigned would fail. (*Id.* ¶ 24.) Plaintiff alleges that this was all part of a plot concocted by Mehlig to sabotage Plaintiff. (*Id.*)

On May 22, 2018, Plaintiff received an email from Joe Simpson, Executive Director of Human Resources, informing Plaintiff that the College was investigating allegations of misconduct against him. (*Id.* ¶¶ 4, 28; Dkt. 20-1.) During its investigation, the College spoke with witnesses who claimed that Plaintiff "consumed alcohol during the [workday], on several occasions, and returned to work." (Dkt. 20-1.) The witnesses also confirmed "various employees' concerns regarding [Plaintiff's] professionalism within the workplace." (*Id.*) Based on these findings, Simpson asked Plaintiff to resign. Simpson informed Plaintiff that, if he did not resign by May 24, 2018, the College intended to terminate him. (*Id.*) Plaintiff alleges this investigation was pretextual and was rooted in race- and age-based discrimination and was conducted in retaliation for his refusal to go along with Mehlig's scheme to inflate the College's enrollment numbers. (Am. Compl. ¶¶ 30-31.)

On May 30, 2018, the College terminated Plaintiff's employment on the grounds that Plaintiff engaged in "workplace misconduct" and that he failed to meet "performance expectations." (*Id.* ¶¶ 26, 27.) Following his termination, Plaintiff

applied for unemployment benefits through the Illinois Department of Employment Security ("IDES"). (*Id*. ¶ 32.) On June 7, 2018, Simpson sent IDES a letter objecting to the unemployment benefits on the grounds that Plaintiff was terminated for "disqualifying acts of misconduct." (*Id*. ¶ 32.[2]) Plaintiff was eventually able to secure unemployment benefits through IDES after three unsuccessful appeals by the College. (*Id*. ¶ 33.)

On March 29, 2019, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). (*Id*. ¶ 57; Dkt. 20-3.) Plaintiff then filed this multi-count lawsuit against the College, Rock Valley College President Douglas Jensen, Joe Simpson, Lisa Mehlig, and Administrative Assistant for Recruitment Lisa DuSavage. Plaintiff alleges violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. (against the College only), the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq*. (against the College only), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. (against the College only), his constitutional right to equal protection under 42 U.S.C. Section 1983 (against the College, Jensen, Simpson, and Mehlig), and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, *et seq*. (against the College only). Defendants have now moved to dismiss the entirety of Plaintiff's complaint. (Dkt. 22.)

---

[2] Although both the Amended Complaint (Dkt. 20) and the original Complaint (Dkt. 1) reference this letter as "Exhibit F", Plaintiff did not attach this letter to either version of the complaint. Without the benefit of examining the actual letter, the Court accepts as true Plaintiff's allegations regarding its contents.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). Documents attached to a complaint are considered part of the complaint. Fed. R. Civ. P. 10(c).

As the Seventh Circuit has explained, this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). But although factual allegations are assumed to be true, mere legal conclusions are not. *Iqbal*, 556 U.S. at 678-79. Either way, a plaintiff "can plead himself out of court by including factual allegations that establish that the plaintiff

is not entitled to relief as a matter of law." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) (citing *Hollander v. Brown,* 457 F.3d 688, 691 n.1 (7th Cir. 2006)).

## DISCUSSION

### I.      Statute of Limitations (Counts I, II, IV, and V)

Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against an employee on account of the employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In turn, the ADEA prohibits age discrimination in employment. 29 U.S.C. § 623(a). A plaintiff who wishes to bring a claim under Title VII or the ADEA must first file a charge of employment discrimination with the EEOC within 300 days of the materially adverse employment action that resulted from the alleged unlawful discrimination practice. *See* 42 U.S.C. § 2000e-5(e)(1*)*; 29 U.S.C. § 626(d)(1)(B); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014) ("Title VII provides that a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice, in deferral states like Illinois"); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) ("[I]n Illinois an employee may sue under the ADEA . . . only if he files a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice"). The 300-day limitations period accrues "at the time the employment decision was made and communicated to the employee." *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004) (cleaned up) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).

In the context of a claim for employment discrimination, such adverse employment decisions generally fall into three categories: "(1) termination or reduction in . . . financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011).

The College notified Plaintiff of his termination via letter dated May 30, 2018. (Notice of Termination, Dkt. 20-2.[3]) To meet the 300-day requirement, Plaintiff was required to file his charge of employment discrimination with the EEOC no later than March 26, 2019 (300 days from May 30, 2018). Plaintiff did not file his EEOC charge until March 29, 2019—three days after the deadline. (*See* EEOC Charge of Discrimination, Dkt. 20-3.) Absent some compelling justification for the delay, the Seventh Circuit consistently upholds dismissals of Title VII and ADEA claims for failure to file an EEOC charge within the applicable 300–day period. *See, e.g.*, *Eiler v. McAleenan*, 770 F. App'x 271, 273 (7th Cir. 2019) (nonprecedential disposition) (Title VII and ADEA); *Groesch v. City of Springfield*, 635 F.3d 1020, 1024 n.2 (7th Cir. 2011) (Title VII); *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 452 (7th Cir. 2018) (ADEA).

Plaintiff argues, however, that the adverse employment action that triggered

---

[3] Plaintiff alleges that the College terminated him on May 20, 2018 (*see* Am. Compl. ¶ 26), but his termination letter is dated May 30, 2018 (*see* Notice of Termination, Dkt. 20-2). Regardless of whether the College terminated Plaintiff on May 20 or May 30, his claims are still time-barred.

the 300-day clock was not his termination on May 30, 2018, but the College's alleged interference with his unemployment benefits on June 7, 2018. (Dkt. 34 at 2-3.) Plaintiff alleges that on June 7, the College, through Simpson, sent a letter to IDES in which it "objected to any award of unemployment benefits to [Plaintiff] because of [his] alleged termination for engaging in disqualifying acts of misconduct." (Am. Compl. ¶ 32.) In Plaintiff's view, this June 7 interference was the adverse employment decision that triggered the 300-day clock for filing a charge of discrimination with the EEOC, which would make his March 29, 2019 charge timely. As the Supreme Court has explained, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The timeliness of Plaintiff's claims thus turns on whether alleged interference with unemployment benefits can be considered a discrete discriminatory act that would trigger a new 300-day clock for filing a charge of discrimination with the EEOC.

In support of his argument that such interference can constitute an adverse employment decision, Plaintiff relies on *Roney v. Illinois Department of Transportation*, 474 F.3d 455 (7th Cir. 2007). In *Roney*, the plaintiff sued his former employer, the Illinois Department of Transportation ("IDOT"), under Title VII for race-based discrimination and retaliation. *Id.* at 458. The plaintiff argued that IDOT retaliated against him by opposing his unemployment benefits with IDES. *Id.* at 462. Although the Seventh Circuit found no evidence that IDES's denial of benefits to the plaintiff could be attributed to IDOT, *id.*, Plaintiff nonetheless contends the Seventh

Circuit "suggested" that "causing IDES to deny unemployment benefits may be considered a wrongful, retaliatory act by an employer[.]" (Dkt. 34 at 3.) But the Court can find no such "suggestion" in *Roney*, as the Seventh Circuit did not hold or even plainly "suggest" that an employer's actions in responding to a former employee's claim for unemployment benefits can constitute an unlawful employment practice for purposes of Title VII.

Defendants rely on *Dismukes v. Administrative Office of the Illinois Courts*, No. 12-CV-8800, 2014 WL 2978173 (N.D. Ill. July 2, 2014) in support of their argument that an employer's challenging a former employee's receipt of unemployment benefits is not an "adverse employment action" for purposes of an employment discrimination claim. (Dkt. 39 at 3.) In *Dismukes*, the plaintiff sued his former employers for race-based employment discrimination in violation of Title VII. *Id.* at *1. The defendants moved to dismiss the Title VII claim because the plaintiff failed to file an EEOC charge within the 300-day limitations period. *Id.* at *2. As does Plaintiff here, the plaintiff in *Dismukes* argued that the adverse employment event that started the 300-day clock was not his termination, but rather his former employer's alleged interference with his unemployment benefits. *Id.* Disagreeing, the district court held that "an employer has the right to challenge a former employee's receipt of unemployment benefits and therefore doing so is not an adverse employment action for purposes of a discrimination claim." *Id.; see also Frederick v. Henderson,* 232 F. Supp. 2d 901, 916 (N.D. Ill. 2002) (employer's act of protesting unemployment benefits for terminated employee was not, by itself, an "adverse employment action"

under Title VII).

Unaware of any binding Seventh Circuit precedent to the contrary, the Court is persuaded by the reasoning of *Dismukes* and *Frederick* and holds that the College's alleged interference with Plaintiff's post-termination unemployment benefits cannot be considered an "adverse employment action" for purposes of his Title VII and ADEA claims. *See id.* ("An employer has a right to protest an employee's unemployment benefits if it reasonably believes it has legitimate grounds to do so. Thus, USPS's act of protesting Frederick's unemployment benefits, alone, was not an adverse employment action").

The 300-day window for Plaintiff to file his EEOC charge of discrimination thus began on May 30, 2018 (the date of his termination). Because Plaintiff failed to file his charge within 300 days of that adverse employment action, his Title VII and ADEA claims must be dismissed as time-barred. Although this dismissal for failure to meet the deadline by three days is admittedly categorical, the Supreme Court has explained that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Morgan*, 536 U.S. at 108 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980))*; see also Threadgill v. Moore U.S.A.*, 269 F.3d 848, 851 (7th Cir. 2001) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants" (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984))). Accordingly, Plaintiff's Title VII and ADEA claims (Counts I, II, IV, and V) are dismissed. Because

repleading could not cure the untimeliness of these claims, this dismissal is with prejudice. *See Conover v. Lein*, 87 F.3d 905, 908 (7th Cir. 1996) (an untimely claim should be dismissed with prejudice).

## II.    Section 1983 Claims (Count VII)

Plaintiff next brings a Section 1983 claim against the College, Jensen, Simpson, and Mehlig for race discrimination in violation of his equal protection rights under the Fourteenth Amendment of the U.S. Constitution.[4] (Am. Compl. ¶¶ 100-123.) Section 1983 provides that any person who, acting under the color of law, causes the deprivation of "any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that "municipalities and other local government units [are] included among those persons to whom § 1983 applies[,]" but that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 690-691 (1978). Instead, municipal liability exists only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* at 694.

The Seventh Circuit has identified three ways in which a municipality or other

---

[4] It is unclear whether Plaintiff brings a Section 1983 claim against DuSavage as well. Although Plaintiff alleges that DuSavage, among others, "interfered with [his] rights, privileges, or immunities secured by the Constitution and laws[,]" (Am. Compl. ¶ 121), his cause of action for violation of Section 1983 (Count VII), does not specifically name DuSavage, (*see id.* at 20 ("Count VII: Violation of 42 USC § 1983 – Against Rock Valley College and Defendants Douglas, Joe and Mehlig")). As Plaintiff is the master of his complaint, the Court will not take the liberty of assuming that Plaintiff intended to sue individuals he did not specifically name in any given cause of action. Accordingly, the Court construes Plaintiff's

local governmental unit might violate Section 1983: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). Plaintiff premises his Section 1983 claim against the College on both the "widespread practice" and "final decisionmaker" theories. (*See* Am. Compl. ¶¶ 108, 110-12.) As discussed below, under either approach, Plaintiff fails to state a plausible Section 1983 claim.

### A. Statute of Limitations

Defendants first argue that Plaintiff's Section 1983 claims are time-barred. Section 1983 does not contain an express statute of limitations. Accordingly, federal courts apply the forum state's statute of limitations for personal injury claims to Section 1983 claims. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Because the statute of limitations for personal injury claims is two years under Illinois law, 735 ILCS 5/13-202, the appropriate statute of limitations for Section 1983 cases filed in federal court in Illinois is also two years. *See Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (applying Illinois's two-year statute of limitations for personal injury claims to Section 1983 claim). Plaintiff filed his first complaint on August 13,

---

claim for violation of Section 1983 (Count VII) as being brought against the College, Jensen, Simpson, and Mehlig only.

2019. (Dkt. 1.) Defendants argue that Plaintiff's Section 1983 claims are time-barred to the extent they are based on events that occurred before August 13, 2017—two years before the date he filed his first complaint. (Dkt. 23 at 4-5.)

The Amended Complaint is light on detail as to when the allegedly discriminatory actions that gave rise to Plaintiff's Section 1983 claims took place. Plaintiff alleges only that his off-campus meeting with Mehlig—the event that set off the chain of allegedly discriminatory events—took place "during 2017." (Am. Compl. ¶ 19.) Plaintiff does not plead specifically when in 2017 this meeting, or any other allegedly wrongful acts, occurred. This temporal imprecision, however, does not warrant dismissal of Plaintiff's Section 1983 claim on statute of limitations grounds. On a motion to dismiss, the Court must "draw reasonable inferences in [Plaintiff's] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Even though the timeline in the Amended Complaint is imprecise, the facts alleged allow the Court to draw the reasonable inference that the allegedly discrimination conduct could have happened within the two-year limitation period for Section 1983 claims brought in Illinois. At this juncture, the Court does not find that the facts alleged, viewed in the light most favorable to Plaintiff, require dismissal of his Section 1983 claims as time-barred. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (where a defendant raises the statute of limitations as an affirmative defense at the motion to dismiss stage, a court can only dismiss a claim "when [the] complaint plainly reveals that an action is untimely under the governing statute of limitations" (cleaned up)).

### B.    The College

#### 1.    *Widespread Practice*

Plaintiff argues that the College engaged in a "widespread practice" of treating Black employees less favorably than employees who are not Black. (Am. Compl. ¶¶ 108, 110.) Plaintiff concedes that this policy "is not authorized by written law or express company policy," but he alleges that the "practice of discrimination . . . is so permanent and well-settled as to constitute a custom and/or usage with the force of law." (*Id.* ¶ 109.)

Although the Seventh Circuit has not adopted "any bright-line rules defining a 'widespread custom or practice[,]' . . . it must be more than one instance, or even three." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (cleaned up)*; see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (to establish a widespread practice, "there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events"); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (three separate incidents with respect to three separate plaintiffs were too few to establish a "persistent and widespread practice"); *Calhoun*, 408 F.3d at 380 ("[I]n the 'widespread practice' implicit policy cases . . . what is needed is evidence that there is a true municipal policy at issue, not a random event").

Plaintiff has failed to allege a widespread practice of discriminatory conduct at the College. The group that Plaintiff alleges was the subject of the "widespread" discriminatory practice—specifically, "Blacks who occupy the position of Executive

Director of Recruitment and Admissions, or Associate Vice President for Enrollment and Retention[,]" (Am. Compl. ¶ 113)—includes, at most, only Plaintiff. *See id.* ¶¶ 15-16 (Plaintiff's titles while working at the College included Executive Director of Recruitment and Admissions and Associate Vice President for Enrollment and Retention)). Plaintiff does not allege that any other Black employees held these positions, which leads to the conclusion that the alleged "widespread practice" applies to Plaintiff alone. An alleged discriminatory practice, however, cannot reasonably be described as "widespread" if it affects only one person. *See Smith v. Ill. Sch. Dist. U-46,* 120 F. Supp. 3d 757, 776 (N.D. Ill. 2015) (no reasonable inference of a "widespread practice" where plaintiff failed to allege even a second instance of wrongdoing against another employee).

Because Plaintiff has not alleged facts that would allow the Court to draw the reasonable inference that the College engaged in a *widespread* practice of discriminatory conduct against Black employees, the Court dismisses Plaintiff's Section 1983 claim to the extent it is based on a "widespread practice" theory of liability under *Monell. See Levin v. Bd. of Educ. of City of Chicago*, 470 F. Supp. 2d 835, 843 (N.D. Ill. 2007) (a widespread practice allegation "based on just two instances of unconstitutional conduct . . . does not suggest a widespread, enduring practice that violates constitutional rights in a systemic manner" (cleaned up)).

## 2. *Final Policymaking Authority*

Plaintiff also alleges that that the College's discriminatory conduct was "directly attributable to . . . final policymaker[s]" including Jensen, Simpson, Mehlig,

and "other members of management." (Am. Compl. ¶¶ 111-112.) Defendants argue, however, that the final policymaking authority for the College lies with the Board of Trustees—not with these individual employees—and that, as a result, Plaintiff does not allege the final policymaker for the College caused his constitutional injury. (Dkt. 39 at 5.)

Whether an official has "final policymaking authority" is a question of state law. *Duda v. Bd. of Educ. of Franklin Park Public Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). Under the Illinois Public Community College Act ("PCCA"), a community college's board of trustees is vested with the power to "employ such personnel as may be needed [and] to establish policies governing their employment and dismissal[.]" 110 ILCS 805/3-42. A board of trustees may not delegate this power. *See Bd. of Trs. of Cmty. Coll. Dist. No. 508 v. Cook Cnty. Coll. Teachers Union, Local 1600, AFT, AFL-CIO*, 522 N.E.2d 93, 95 (Ill. App. Ct. 1987) (a community college board of trustees' power to terminate an employee is a "power [that] may not be delegated"). Plaintiff does not allege that Jensen, Simpson, and Mehlig are members of the College's board of trustees. Accordingly, as a matter of law, Jensen, Simpson, and Mehlig are not final policymakers for the College and did not have the authority to terminate Plaintiff's employment. Plaintiff thus fails to allege a Section 1983 claim under the "final policymaking authority" theory of *Monell* liability.

## C. Individual Defendants

Plaintiff also names Jensen, Simpson, and Mehlig in his Section 1983 claim

under Count VII. It is unclear from the face of the Amended Complaint whether Plaintiff brings his Section 1983 claim against these individual defendants in their official or personal capacities. The case caption names these employees as defendants both "Individually and in [their] Official Capacit[ies][.]" But regardless of whether Plaintiff sues these individual defendants in their official or personal capacities, Plaintiff's Section 1983 claim against them fails.

       1.    *Official Capacities*

To the extent Plaintiff brings a Section 1983 claim against Jensen, Simpson, and Mehlig in their official capacities, Defendants argue that these claims are duplicative of Plaintiff's Section 1983 claim against the College and must be dismissed. (Dkt. 23 at 8.) Defendants are correct. The Seventh Circuit has made clear that "an official capacity suit is the same as a suit against the entity of which the officer is an agent." *See DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 974 n.1 (7th Cir. 2000). To the extent Plaintiff brings his Section 1983 claims against Jensen, Simpson, and Mehlig in their official capacities, the claim is redundant and unnecessary because their employer, the College, is also named as a defendant. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) (affirming dismissal of Section 1983 claims against schoolteachers and administrators named in their official capacity where the plaintiff also sued the school district); *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001) ("Richman sued Sheahan in his official capacity, and therefore the claim is against the entity of which he is an agent"). Accordingly, Plaintiff's Section 1983 claim against Simpson, Jensen, and Mehlig in their official capacities is dismissed with prejudice.

17

2.      *Personal Capacities*

Finally, in his response brief, Plaintiff appears to maintain that he also sued Jensen, Simpson, and Mehlig under Section 1983 in their personal capacities. (Dkt. 34 at 5-6.) The allegations in the Amended Complaint, however, are unclear in this regard: although the case caption names Jensen, Simpson, Mehlig, and DuSavage as defendants "individually," the body of the Amended Complaint is devoid of any specific allegations that Plaintiff brings his Section 1983 claim against the individual defendants in their personal capacities, as opposed to their official capacities. Regardless of whether Plaintiff brings his Section 1983 claim against the individual defendants in their official or personal capacities, his claim fails.

Individual liability under Section 1983 requires an employee's "personal involvement in the alleged constitutional deprivation[.]" *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). To state such a claim, a plaintiff must allege "a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id*.; *see also Iqbal*, 556 U.S. at 676 ("[T]he plaintiff . . . must plead that each Government-official defendant, through his own individual actions, has violated the Constitution"); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation" (quoting *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994))). Accordingly, Section 1983 plaintiffs must "ground [their] legal conclusions in a sufficiently plausible

factual basis" that places each defendant "on notice of what exactly [he or she] might have done to violate [the plaintiff's] rights under the Constitution [or] federal law. . . ." *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). Vague references "to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct," are insufficient. *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008).

Plaintiff alleges that the individual defendants "facilitated, approved, condoned, and turned a blind eye [to the alleged misconduct]." (Am. Compl. ¶ 122 (cleaned up).) But this allegation merely recites the standard for situations in which a supervisor may be held liable for the unconstitutional conduct of his or her subordinates under Section 1983. *See T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (supervisors face liability under Section 1983 only if they "know about the unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see" (cleaned up)). Plaintiff's allegations, even construed liberally, do not contain enough detail that would allow the Court to draw the plausible inference that the individual defendants were "personally involved" in the alleged constitutional deprivation. *See Colbert*, 851 F.3d at 657. Although the well-pleaded facts in the Amended Complaint are accepted as true, legal conclusions and conclusory allegations merely reciting the elements of a claim are not. *See Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). Count VII is dismissed without prejudice to the extent Plaintiff brings claims against the individual defendants in their personal capacities.

### III.    Title VI (Count VIII)

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. Congress enacted Title VI to "avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979)).

To state a claim under Title VI, a plaintiff must plausibly allege that he is a beneficiary of, applicant for, or participant in a federally funded program. *See Simpson v. Reynolds Metals Co.,* 629 F.2d 1226, 1235 (7th Cir. 1980). Employees of a federally funded program, however, cannot ordinarily bring an action under Title VI unless the primary objective of the federal grant is to provide employment. *See Maloney v. Washington*, No. 84 C 689, 1987 WL 26146, at *1 (N.D. Ill. Dec. 1, 1987). Plaintiff alleges that the College "accepts and receives funding . . . from the federal government for grants, scholarships, federal student loans, *and employment* which is a primary objective of the federal aid." (Am. Compl. ¶ 130 (emphasis added).) Accepting this allegation as true—as it must on a motion to dismiss—the Court finds that Plaintiff has adequately pleaded that he is a beneficiary of federal funds whose primary object is to provide employment.

The College argues, however, that Plaintiff's Title VI claim fails because

20

Plaintiff alleges only that the College's employees—not the College itself—discriminated against him and that the College cannot be held liable for these employees' actions through the doctrine of *respondeat superior*. (Dkt. 39 at 9-10.) *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1023-24 (7th Cir. 1997) ("Because Title IX only prohibits discrimination by the 'program or activity,' it must be the 'program or activity' and the institution that operates it that discriminate, not merely one of its employees") A defendant may be found liable for the actions of its employees in this context only where the plaintiff "pleads that one of the defendant's officials who at a minimum has authority to institute corrective measures had actual knowledge of and was deliberately indifferent to the discriminatory conduct." *Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 694 (N.D. Ill. 2019) (cleaned up) (quoting *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012)).

The College is correct. Plaintiff alleges he experienced discriminatory treatment "by other employees," (Am. Compl. ¶ 134), but he does not allege that any College program or activity discriminated against him. Nor has he alleged that any of the College's officials who had the authority to institute corrective measures had actual knowledge of, and was deliberately indifferent to, the discriminatory conduct. Accordingly, Plaintiff's claim for violation of Title VI is dismissed without prejudice.

## III. Illinois Whistleblower Act (Count III)

Because Plaintiff's claims under federal law are dismissed, only the state-law Illinois Whistleblower Act ("IWA") claim remains. Under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the

court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although this decision is discretionary, when "all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). That presumption "should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Cos., Inc. v. BP Prods. N. Am.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Khan v. State Oil. Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)).

It is appropriate to defer for now a ruling on Plaintiff's state-law claim. Because the Court is giving Plaintiff leave to amend his complaint in an attempt to address the pleading deficiencies identified in this opinion, the Court will address Plaintiff's IWA claim upon the filing of any renewed motion to dismiss by Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 22) is granted in large part. Plaintiff's claims under Title VII and the ADEA (Counts I, II, IV, and V) are dismissed with prejudice as time-barred. Plaintiff's Section 1983 claim against the individual defendants in their official capacities is dismissed with prejudice as duplicative of his Section 1983 claim against the College. Plaintiff's remaining federal claims are dismissed without prejudice. Finally, the Court declines to address Plaintiff's IWA claim at this juncture. If Plaintiff believes he can correct the pleading deficiencies identified in this opinion, he has until September 24, 2021 to file a second

amended complaint. If Plaintiff does not file a second amended complaint by that date, the dismissal will convert to a dismissal with prejudice and the Court will exercise its discretion under 28 U.S.C. § 1367(c) to relinquish supplemental jurisdiction over Plaintiff's IWA claim. *See Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("[W]hen all federal claims have been dismissed before trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)").

SO ORDERED in No. 19-cv-05465.

Date: September 3, 2021

_____

JOHN F. KNESS
United States District Judge