IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELVIN ALLEN,<br><br>    Plaintiff,<br><br>    v.<br><br>BOARD OF TRUSTEES ROCK VALLEY COLLEGE, an Illinois public community college, DOUGLAS JENSEN, JOE SIMPSON, LISA MEHLIG, and LISA DuSAVAGE,<br><br>    Defendants. | No. 19-cv-05465<br><br>Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. (Dkt. 47.) As explained below, Plaintiff's current pleading fails to provide enough facts to set forth plausible federal claims under either Section 1983 or Title VI of the Civil Rights Act of 1964. As a result, Counts II and VIII of the Second Amended Complaint must be dismissed. This dismissal is without prejudice, as the Court will, in its discretion, afford Plaintiff a final opportunity to submit an amended complaint if Plaintiff believes he can, in good faith, address the concerns identified in this opinion. In view of this outcome, the Court defers ruling on the sufficiency of Plaintiff's state-law claim (Count I).

**I. BACKGROUND**

Defendant Rock Valley Community College (the "College"), a public community college in Rockford, Illinois, hired Plaintiff Melvin Allen as its Executive Director for

Recruitment and Admissions in 2014. (Dkt. 45 ¶ 15.) In this role, Plaintiff handled the Recruitment and Admissions departments, where he oversaw a staff of eight employees and eleven students. (*Id.*) After a reorganization in 2017, Plaintiff's title changed to Associate Vice President for Enrollment and Retention, where Plaintiff was responsible for overseeing several more departments and at least eleven more staff members. (*Id.* ¶ 16.) Plaintiff alleges that similarly situated employees "were paid more to do much less work and supervise far fewer employees" and received a stipend, but he did not receive a stipend. (*Id.* ¶ 17.)

Plaintiff states that he met with Defendant Lisa Mehlig, Vice President of Admissions, off campus in 2017, and Mehlig asked Plaintiff to "support" inaccurate enrollment numbers that were to be reported to the Illinois Community College Board. (*Id.* ¶ 19.) Plaintiff told Mehlig that he believed the enrollment numbers were wrong and had been so for "a long time." (*Id.*) Mehlig responded that she would "just cover up the inaccuracies." (*Id.* ¶ 20.) Plaintiff replied that he could not support the inaccurate information, and Mehlig warned him not to speak to any College board members about the enrollment numbers. (*Id.*)

Shortly thereafter, Plaintiff alleges that Mehlig directed another staff member, Dave Costello, to begin "snooping and making unwelcome and unnecessary visits" to Plaintiff's office and the areas he supervised. (*Id.* ¶ 21.) Other staff members under Plaintiff's supervision noticed Costello's "snooping" and asked him to stop. (*Id.* ¶ 22.) Plaintiff alleges that Costello purposefully neglected certain work responsibilities so that the projects to which he and Plaintiff were assigned would fail. (*Id.* ¶ 24.)

2

Plaintiff contends that this was all part of a plot concocted by Mehlig to sabotage Plaintiff. (*Id.*)

On May 22, 2018, Plaintiff received an email from Defendant Joe Simpson, Executive Director of Human Resources, informing Plaintiff that the College was investigating allegations of misconduct against him. (*Id.* ¶¶ 4, 28; Dkt. 45-1.) During the investigation, the College spoke with witnesses who claimed that Plaintiff "consumed alcohol during the [workday], on several occasions, and returned to work." (Dkt. 20-1.) The witnesses also confirmed "various employees' concerns regarding [Plaintiff's] professionalism within the workplace." (*Id.*) Based on these findings, Simpson asked Plaintiff to resign. Simpson informed Plaintiff that, if he did not resign, the College intended to terminate Plaintiff. (*Id.*) Plaintiff alleges this investigation was pretextual and rooted in race- and age-based discrimination and was conducted in retaliation for his refusal to go along with Mehlig's scheme to inflate the College's enrollment numbers. (Dkt. 45 ¶¶ 30–31.)

On May 30, 2018, the College terminated Plaintiff's employment on the grounds that Plaintiff engaged in "workplace misconduct" and failed to meet "performance expectations." (*Id.* ¶¶ 26–27.) Following his termination, Plaintiff applied for unemployment benefits through the Illinois Department of Employment Security ("IDES"). (*Id.* ¶ 32.) On June 7, 2018, Simpson sent IDES a letter objecting to the unemployment benefits on the grounds that Plaintiff was terminated for "disqualifying acts of misconduct." (*Id.*) Plaintiff eventually secured unemployment benefits through IDES after three unsuccessful appeals by the College. (*Id.* ¶ 33.)

3

On March 29, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. (*Id.* ¶ 57; Dkt. 20-3.) Plaintiff then filed this multi-count lawsuit. Defendants moved to dismiss Plaintiff's complaint in its entirety, which the Court granted "in large part." (Dkt. 22; Dkt. 43.) The Court dismissed several of Plaintiff's claims with prejudice but permitted Plaintiff to correct the pleading deficiencies in the remaining claims. (Dkt. 43 at 22–23.) Plaintiff filed a second amended complaint renewing three claims: (1) violation of the Illinois Whistleblower's Act (Count I); (2) violation of Section 1983 (Count II) (brought against the College and Defendants Jensen, Simpson, and Mehlig; and (3) violation of Title VI (Count VIII). (Dkt. 45 ¶¶ 59–118.) Defendants now move to dismiss all counts of Plaintiff's second amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 47.)

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774,

4

777 (7th Cir. 2022) (cleaned up). As the Seventh Circuit has emphasized, a plaintiff need not "lay out every element or ingredient" of a claim to survive a Rule 12(b)(6) motion. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336 (7th Cir. 2024). Such "details and proof" come later, and all a plaintiff must do is "state a grievance." *Id.* at 1338. In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III. DISCUSSION

### A. Section 1983 Claims (Count II)

Plaintiff brings a Section 1983 claim against the College and individual Defendants Simpson, Mehlig, and Douglas Jensen (President of the College) for race and age discrimination in violation of his equal protection rights under the Fourteenth Amendment of the Constitution. (Dkt. 45 ¶¶ 76–103.) Section 1983 creates liability for any person who, acting under the color of law, causes the deprivation of "any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Municipalities and local governments[1] are liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,

---

[1] Under the Public Community College Act of Illinois, 110 ILCS 805/1-1 *et seq.*, the College is considered a unit of local government. *See Bd. of Trs. of Cmty. Coll. Dist. No. 502 v. Dep't of Prof'l Regul.,* 842 N.E.2d 1255, 1266 (Ill. Ct. App. 2006).

5

690–91 (1978). Section 1983 liability can attach to municipalities and local governments only through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a "wide-spread practice" unauthorized by law but so permanent and well-settled as to constitute "custom or usage"; or (3) an allegation that the injury was caused by a person with "final decision policymaking authority." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)); *see also Johnson v. Ill. Dep't of Corr.*, No. 19-cv-4888, 2024 WL 4368129, at *4 (N.D. Ill. Sept. 30, 2024). Plaintiff's Section 1983 claim is premised on the "widespread practice" and "final decisionmaker" theories.[2] (*See* Dkt. 45 ¶¶ 84–89.)

### 1. Widespread Practice.

As the Court previously found, Plaintiff's "widespread practice" argument in the first amended complaint did not allege sufficient facts to support a plausible inference that the College had engaged in a widespread practice of discriminatory conduct against Black employees. (Dkt. 43 at 15.) Plaintiff failed to allege that any Black employee other than himself suffered similar discriminatory treatment. (*Id.*) Plaintiff's second amended complaint now adds several new allegations to support his "widespread practice" theory:

---

[2] Plaintiff appears to possibly also be bringing his Section 1983 claim under the "express policy" theory. Plaintiff's second amended complaint adds an allegation that the College's practices represent "the execution of a policy or practice of discrimination made by those whose edicts or acts may fairly be said to represent *official policy* . . . ." (Dkt. 45 ¶ 86.) But beyond that statement, Plaintiff does not specify any "express policy" to support his allegations. *See Calhoun*, 408 F.3d at 379. Accordingly, as this Court similarly interpreted the first amended complaint, Plaintiff has brought his Section 1983 claim only under the "widespread practice" and "final decisionmaker" theories. (*See* Dkt. 43 at 12.)

6

- "White counterparts are . . . often hired without the rigorous interview that Black candidates are required to submit to . . . , are given less work, and they are provided more pay." (Dkt. 45 ¶ 89.)

- A white executive who supervised one employee received a stipend, whereas Plaintiff, "who had significantly greater supervisory duties," did not. (*Id.*)

- The College had a "practice of freezing Black employees out of important meetings." (*Id.* ¶ 91.) For example, Plaintiff was "routinely left out of meetings that white counterparts attended and his name was left off of certain leadership documents." (*Id.*)

- It was "common practice" for employees to drink alcohol at lunch, and the "College even hired people who had DUI histories." (*Id.* ¶ 100.)

- A Black employee named Dr. Tia Robinson was also discriminated against. (*Id.* ¶ 45.)

- Plaintiff's supervisor cancelled numerous meetings with Plaintiff, but "upon information and belief, [the supervisor] did not cancel meetings with that frequency . . . with white subordinates." (*Id.* ¶ 48.)

- Defendant Jensen also cancelled "dozens of meetings with Plaintiff" but "upon information and belief, [Jensen] did not cancel meetings with that frequency . . . with white subordinates." (*Id.* ¶ 49.)

7

Defendants argue that these new allegations do not adequately plead a widespread practice by the College because the "alleged practice is still, at most, limited to [Plaintiff]." (Dkt. 48 at 6.)

As the Court stated in its previous Order, a plaintiff seeking to establish a *Monell* claim under the widespread practice theory must present "some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events." (Dkt. 43 at 14.) *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020). A plaintiff must "introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Id.* Such evidence generally must allege "more than one, and sometimes more than three, instances of misconduct." *Carmona v. City of Chi.*, No. 15-CV-462, 2018 WL 306664, at *2 (N.D. Ill. Jan. 5, 2018).

Applying this standard, the Court finds that Plaintiff has again failed to allege a widespread practice of discriminatory conduct by the College. Plaintiff contends that he has sufficiently asserted "disparate treatment, denial of promotion, unequal terms and conditions of employment, denial or compensation, and the creation of a hostile work environment" so pervasive within the College that it constitutes a custom. (Dkt. 45 ¶ 85; Dkt. 55 at 4.)

To be sure, Plaintiff has stated these allegations. But Plaintiff's second amended complaint suffers from the same deficiencies of pleading as did his first amended complaint. Plaintiff's added allegations do not sufficiently support his argument that the College had a widespread practice of discrimination. Plaintiff

8

makes vague assertions that Black employees experience more rigorous interviews and are compensated less. (*See* Dkt. 45 ¶ 89.) Plaintiff also alleges that a Black woman named Dr. Tia Robinson apparently also experienced discrimination at the hands of Defendants. (*Id.* ¶ 45.) But Plaintiff does not support these allegations with "any degree of factual specificity." *Winchester v. Marketti*, No. 11-cv-9224, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012). Plaintiff provides no more information on exactly what discrimination Dr. Tia Robinson experienced or how any of the Defendants were liable for it. Nor does Plaintiff provide any more evidence to support his compensation allegation than an assertion that one white executive who had fewer supervisory duties than Plaintiff purportedly received a stipend. (Dkt. 45 ¶ 89.) As the Court has previously held, and reiterates here, alleging only one instance of discrimination is insufficient to support an argument that a "widespread practice" of discrimination exists. (Dkt. 43 at 14.) *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Plaintiff also alleges that the College had a widespread practice of discrimination because Plaintiff's supervisors cancelled numerous meetings with Plaintiff, left him out of meetings, and removed his name from leadership documents. (Dkt. 45 ¶¶ 48, 49, 91.) Plaintiff states that "upon information and belief," this does not happen with white employees. (*Id.* ¶¶ 48–49.) But beyond Plaintiff's "upon information and belief" statement, Plaintiff does not allege any other situation other than his own experience where Black employees had meetings cancelled, were left out of meetings, and were removed from leadership documents. Again, as this Court

9

stated in adjudicating Defendant's first motion to dismiss, an alleged discriminatory practice "cannot reasonably be described as 'widespread' if it affects only one person." (Dkt. 45 at 15.) *See Ballard v. Harmston*, No. 16 C 8166, 2024 WL 942424, at *5 (N.D. Ill. Mar. 5, 2024) (dismissing widespread practice theory because the plaintiff presented no evidence beyond his own experience); *Arita v. Wexford Health Sources, Inc.*, No. 15-cv-01173, 2016 WL 6432578, at *2 (N.D. Ill. Oct. 31, 0216) (same). Because these allegations are only supported by Plaintiff's personal experience, they cannot be considered "widespread."

Plaintiff's tries but fails to salvage his claim by stating that, upon "information and belief," the same supervisors did not cancel meetings with white employees as frequently. (Dkt. 45 ¶¶ 48–49.) A plaintiff may support his pleading "upon information and belief" only when the facts are "peculiarly within the possession and control of the defendant." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Because Plaintiff appears to have some suspicion that supervisors cancel meetings with Black employees more than they do with white employees, the Court assumes that Plaintiff must possess some information to support that suspicion, which would mean that such information is not solely in the control of Defendants. *See Heard*, 440 F. Supp. 3d at 969. Nor does Plaintiff explicitly allege that such information is solely in the Defendants' control.

Accordingly, because Plaintiff has not alleged facts that would allow the Court to draw the reasonable inference that the College engaged in a widespread practice

10

of discriminatory conduct against Black employees, Plaintiff's Section 1983 claim is dismissed without prejudice to the extent it is based on a "widespread practice" theory of liability under *Monell*.

2. *Final Policymaking Authority*

Plaintiff also alleges that the College's discriminatory conduct was "directly attributable to . . . final policymaker[s]" including Defendants Jensen, Simpson, Mehlig, DuSavage, and "other members of management." (Dkt. 45 ¶¶ 87, 88, 101.) On the first amended complaint, the Court dismissed Plaintiff's "final policymaking" theory: as explained earlier, only a college's board of trustees is vested with final policymaking authority, and Plaintiff had not plausibly alleged that any of the individual Defendants were members of the College's board of trustees. (Dkt. 43 at 16.)

Plaintiff now attempts to cure this deficiency by alleging that Defendant Jensen[3] was a member of the College's board of trustees at the relevant time. (Dkt. 45 ¶¶ 3, 17, 43, 88, 90.) Defendants points out that Jensen was never a member of the College's board of trustees and submits evidence in support of that position. (Dkt. 48 at 8; Dkt. 48-1.) Whether the Court may ultimately take judicial notice of Defendants' contention, which directly contradicts Plaintiff's assertions, *see Price v. Chi. Pub. Schs.*, No. 23 CV 5179, 2024 WL 4300655, at *1 (N.D. Ill. Sept. 26, 2024) (citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, No. 128 F.3d 1074, 1080 (7th Cir. 1997) (district court may take judicial notice of matters referred to in the complaint

---

[3] Plaintiff does not allege that the remaining individual Defendants Simpson, Mehlig, and DuSavage are members of the College's board of trustees.

11

that appear in the public record), is a matter for another day. A motion to dismiss is, with a few exceptions, not the correct procedural stage for challenging alleged facts. To the extent Plaintiff persists in asserting in any future amended pleading that the facts concerning Defendant Jensen remain different than what Defendants now assert, he must do so cognizant of the standards set forth in Rule 11 of the Federal Rules of Civil Procedure.

Plaintiff adds that "to the extent [Jensen] lacked formal, final decision-making authority, he would have solicited and received Board approval for his decision." (Dkt. 45 ¶ 43.) But this assertion is not sufficient to save Plaintiff's argument, because, as this Court has already noted, a board of trustees may not delegate its final decision-making authority. (Dkt. 43 at 16 (citing *Bd. of Trs. of Cmty. Coll. Dist. No. 508 v. Cook Cnty. Coll. Teaches Union, Local 1600*, 522 N.E.2d 93, 95 (Ill App. Ct. 1978)).) For these reasons, the Court dismisses Plaintiff's Section 1983 claim without prejudice to the extent it is based on a "final policymaking authority" theory of liability under *Monell*.

### 3. Individual Capacities.

Plaintiff again brings a Section 1983 claim against Defendants Jensen, Simpson, and Mehlig in their individual capacities. These claims were previously dismissed because Plaintiff's allegations, even construed liberally, did not "contain enough details that would allow the Court to draw the plausible inference that the individual defendants were 'personally involved' in the alleged constitutional deprivation." (Dkt. 43 at 19.)

12

Plaintiff argues that he has cured this deficiency because he has alleged the following: (1) Plaintiff was paid less than non-Black colleagues; (2) Plaintiff was required to take on additional responsibilities without pay; (3) Plaintiff was denied a stipend in comparison to a white executive; (4) Defendant Mehlig "deliberately roped" Plaintiff into an "illegal scheme" to fabricate enrollment numbers; and (5) the individual Defendants wrongfully accused Plaintiff of unauthorized drinking. (Dkt. 55 at 8.) But most of these allegations were already stated in Plaintiff's first amended complaint, which the Court analyzed and found to be insufficient to plead any personal involvement by the individual Defendants in Plaintiff's alleged constitutional deprivations. (*See* Dkt. 43 at 19–20.)

In the second amended complaint, Plaintiff does not plead any additional details alleging any personal involvement in Plaintiff's alleged constitutional deprivation. Plaintiff comes closest in alleging that Defendants Jensen, Simpson, and Mehlig "pushed the allegation that Plaintiff's drinking at lunch was inappropriate." (Dkt. 45 ¶ 100.) But this allegation too suffers from a lack of needed contextual details concerning what these individual Defendants did to "push" that allegation and how those actions led to a constitutional deprivation. *See Gummow v. Moneyelle*, No. 22-cv-50433, 2024 WL 4766296, at *1 (N.D. Ill. Nov. 13, 2024) ("[A] court should dismiss a [Section 1983 claim] that doesn't provide sufficient factual details to establish personal responsibility . . . ."). Accordingly, Plaintiff's Section 1983 claims against the individual Defendants are dismissed without prejudice. If Plaintiff submits another amended complaint, he must take seriously the need to set forth a plausible story

13

concerning how the individual Defendants—*themselves*—violated Section 1983 by *their own* conduct.

### B. Title VI Claims (Count VIII)

Plaintiff next brings a Title VI claim against Defendants. Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. Title VI only prohibits discrimination by "program or activity," which means that an employee of an institution cannot be liable under Title VI. *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1023–24 (7th Cir. 1997). An individual employee may only be liable if the plaintiff pleads that the employee "who at a minimum has authority to institute corrective measures" had "actual knowledge" of and was "deliberately indifferent to" the discriminatory conduct." *Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 694 (N.D. Ill. 2019) (quoting *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012)).

This claim in Plaintiff's first amended complaint was dismissed because Plaintiff did not allege that any college program or activity discriminated against him, nor did Plaintiff allege that any of the College's officials who had authority to institute corrective measures had actual knowledge or, and was deliberately indifferent to, the discriminatory conduct. (Dkt. 43 at 21.)

Plaintiff now argues that he has sufficiently pleaded a Title VI claim. (*See generally* Dkt. 55 at 9.) Because Plaintiff has not cited any College program or activity

14

that has purportedly discriminated against him, the Court assumes that Plaintiff is proceeding in this claim only under an "actual knowledge" and "deliberate indifference" theory. Under this theory, Plaintiff adds to his second amended complaint that Defendants Jensen, Simpson, and Mehlig "had authority to institute corrective measures and had actual knowledge of and w[ere] deliberately indifferent to the discriminatory treatment [Plaintiff] was subjected to." (Dkt. 45 ¶ 118.) Beyond this restatement of the Title VI standard, Plaintiff does not plead any additional allegations in support of the individual Defendants' "actual knowledge" or "deliberate indifference" to Plaintiff's alleged discrimination. And, as discussed above, the remainder of Plaintiff's complaint does not plead sufficient allegations in support of the individual Defendants' personal involvement in the discriminatory treatment Plaintiff was allegedly subjected to. Such "threadbare allegations" and "conclusory statements" are not sufficient to survive a motion to dismiss. *Totten v. Benedictine Univ.*, No. 20 C 6107, 2021 WL 3290926, at *9 (N.D. Ill. Aug. 2, 2021) (citing *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015)). Accordingly, Plaintiff's claim for violation of Title VI is dismissed without prejudice.

\* \* \* \* \*

Plaintiff has attempted to plead his claims several times, including once after this Court had entered an order dismissing all claims. (Dkt. 1; 20; 43; 45.) A third amended complaint may not cure the problems identified above. Plaintiff has also not requested leave to amend his complaint, nor does he suggest how an amendment might cure the dismissed claim. See *Haywood v. Massage Envy Franchising, LLC*,

887 F.3d 329, 335 (7th Cir. 2018); *Mohammed v. Naperville Cmty. Unit Sch. Dist. 203*, No. 19 C 6525, 2021 WL 428831, at *11 (N.D. Ill. Feb. 8, 2021). Defendants thus ask for a dismissal with prejudice. But dismissal with prejudice based on a failure of pleading is a "harsh sanction," and resolution of a case on its merits is preferable. *See Ebmeyer v. Brock*, 11 F.4th 537, 546 (7th Cir. 2021). In its discretion, therefore, the Court will allow Plaintiff a final opportunity to submit a third amended complaint if Plaintiff believes he can, in good faith, address the concerns identified in this Opinion.

### C. Illinois Whistleblower Act Claim (Count I)

Because Plaintiff's claims under federal law are dismissed, only the state-law Illinois Whistleblower Act claim remains. As the Court decided in its previous Order denying all of Plaintiff's claims, the Court again defers for now a ruling on this claim. (*See* Dkt. 43 at 21–22.) Because the Court is giving leave to amend his complaint in an attempt to address the pleading deficiencies identified in this Opinion, the Court will address Plaintiff's Illinois Whistleblower Act claim upon the filing of any renewed motion to dismiss by Defendants.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part. Plaintiff's Section 1983 and Title VI claims are dismissed without prejudice, and the Court declines to address Plaintiff's remaining state-law claim at this time. If Plaintiff believes he can correct the pleading deficiencies identified in this opinion, he may submit a third amended complaint. If Plaintiff does not file a third amended complaint (a due date will be set by separate order), this dismissal will convert to a

16

dismissal with prejudice, and the Court will exercise its discretion under 28 U.S.C. § 1367(c) to relinquish supplemental jurisdiction over Plaintiff's state-law claim. *See Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("[W]hen all federal claims have been dismissed before trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)").

SO ORDERED in No. 19-cv-05465.

Date: March 18, 2025

JOHN F. KNESS
United States District Judge